UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUAN P. ARVELO, Derivatively On Behalf
Of the MF Global Ltd. Employee Stock
Purchase Plan, The MF Global Ltd. 2007 Long
Term Incentive Plan, and The MF Global Ltd.
Approved Savings-Related Share Option Plan
– A Sub-Plan of the MF Global Ltd. Employee
Stock Purchase Plan,

               Plaintiff,

           - against -

JON S. CORZINE, DAVID P. BOLGER,
MARTIN J. GLYNN, EILEEN S. FUSCO,
DAVID GELBER, EDWARD GOLDBERG,
DAVID SCHAMIS, ROBERT S. SLOAN,
JOHN R. MACDONALD, BRADLEY I.
ABELOW, HENRI J. STEENKAMP,
MICHAEL G. STOCKMAN, and BERNARD
DAN,

             Defendants,

           - and -

THE MF GLOBAL LTD. EMPLOYEE
STOCK PURCHASE PLAN, THE MF
GLOBAL LTD. 2007 LONG TERM
INCENTIVE PLAN, and THE MF
GLOBAL LTD. APPROVED SAVINGS-
RELATED SHARE OPTION PLAN – A
SUB-PLAN OF THE MF GLOBAL LTD.
EMPLOYEE STOCK PURCHASE PLAN,

          Nominal Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. _____

Removed from:

Supreme Court of the State of
New York, County of Queens

Index No. 2291/2012

**<u>NOTICE OF REMOVAL</u>**

PLEASE TAKE NOTICE that Defendants Bradley I. Abelow, David P. Bolger, Jon S. Corzine, Eileen S. Fusco, David Gelber, Martin J.G. Glynn, Edward L. Goldberg, John R. MacDonald, David I. Schamis, Robert S. Sloan, Henri J. Steenkamp, and Michael G. Stockman (collectively "Defendants"), by their respective undersigned counsel, hereby timely remove the captioned action to this Court from the Supreme Court of the State of New York, County of Queens.[1]  In support of this Notice of Removal, Defendants state as follows:

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, and removal is proper pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2) and pursuant to 28 U.S.C. § 1441.  In the alternative, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), and removal is proper pursuant to 28 U.S.C. § 1452(a).

2.      This Court occupies the district and division in which this action was pending.  *See* 28 U.S.C. §§ 112(c), 1446(a); *see also* 15 U.S.C. § 78bb(f)(2), 28 U.S.C. § 1452(a).

3.      The captioned action was commenced on or about February 2, 2012, by the filing of a complaint (the "Complaint") in the Supreme Court of the State of New York, County of Queens, naming Defendants, comprising current and former officers,

---

[1] Defendants do not waive and expressly reserve all rights, claims, and defenses, including without limitation all defenses relating to jurisdiction and venue.  By filing this Notice of Removal, Defendants specifically do not waive any defenses they may have to service of process and personal jurisdiction.

and former directors, of MF Global Holdings Ltd. ("MF Global" or the "Company").  *See* Exhibit 1 (Compl., *Arvelo v. Corzine*, No. 2291/2012 (N.Y. Sup. Ct. Feb. 2, 2012)).

4.      The Defendants removing this action constitute all defendants who have been served.[2]  The consent of the Nominal Defendants is not required.  *See*, *e.g.*, *Sierra v. Bally Total Fitness Corp.*, No. 06 Civ. 01688 (ENV), 2007 WL 1028937, at *2 (E.D.N.Y. Mar. 30, 2007).

5.      This Notice of Removal is timely because it is being filed within thirty days of the date of service.  Defendants were served on February 28, 2012, pursuant to a stipulation among the parties of the same date.  *See* Exhibit 3 (Service of Process Stipulation).  That stipulation provides, *inter alia*, that Defendants will have 60 days from the Court's resolution of a remand motion, either by granting it or denying it, to respond to the Complaint; and that Defendants' time to respond is tolled in the event the Judicial Panel on Multidistrict Litigation issues a conditional transfer order relating to this action or if Defendants move to transfer venue.

## BACKGROUND

6.      On October 31, 2011, MF Global filed a voluntary Chapter 11 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  Voluntary Petition (Chapter 11), *In re MF Global Holdings Ltd.*, No. 11-15059 (MG) (Bankr. S.D.N.Y. Oct. 31, 2011).

---

[2]  Plaintiff voluntarily discontinued the above-captioned action as against Defendant Bernard Dan by notice dated February 28, 2012.  *See* Exhibit 2 (Notice of Partial Discontinuance Without Prejudice, No. 2291/2012 (N.Y. Sup. Ct. Feb. 28, 2012)).

7.     Subsequently, numerous lawsuits were filed in the United States District Court for the Southern District of New York, including several putative class actions brought on behalf of MF Global investors alleging various federal securities law claims. One such class action was brought on behalf of MF Global employees who acquired MF Global common shares through MF Global's stock-based benefit plans – i.e., its Employee Stock Purchase Plan and its Long Term Incentive Plan (the "Plans").  *See* Exhibit 4 (Compl., *Rodriguez v. Corzine*, No. 11 Civ. 8815 (VM) (S.D.N.Y. Dec. 5, 2011)) ¶¶ 1, 9-10.  Those MF Global-related cases are pending before Judge Victor Marrero, who has consolidated them under the caption *Deangelis v. Corzine*, No. 11 Civ. 7866 (VM) (S.D.N.Y.).

8.     On January 6, 2012, Plaintiff Juan P. Arvelo filed in the Southern District an action – styled as a class action or, in the alternative, a derivative action on behalf of the Plans – that was, in substance, the same as this action.  *See* Exhibit 5 (Compl., *Arvelo v. Corzine*, No. 12 Civ. 0133 (VM) (S.D.N.Y. Jan. 6, 2012) ("Arvelo Federal Compl.")).  In particular, Plaintiff's federal action contained nearly identical allegations and named the same defendants.  *Compare* Exhibit 1 (Compl.) ¶¶ 31-122 *with* Exhibit 5 (Arvelo Federal Compl.) ¶¶ 31-133.

9.     On January 27, 2012, Judge Victor Marrero consolidated Plaintiff's federal action with the other MF Global-related cases, including securities class actions, pending before him.  *See* Exhibit 6 (Consolidation Order, No. 11 Civ. 7866 (VM) (S.D.N.Y. Jan. 27, 2012)).  Judge Marrero found that Plaintiff's federal action "in all material respects . . . describe[d] the same or substantially similar underlying events arising out of the same or substantially similar operative facts, and assert the same or

4

substantially similar claims against all or most of the same defendants" as the MF-Global related cases pending before him, including seven securities class actions.

10.     On February 1, 2012, Plaintiff voluntarily dismissed his federal action. *See* Exhibit 7 (Notice of Voluntary Dismissal, No. 11 Civ. 7866 (VM) (S.D.N.Y. Feb. 2, 2012)).  The next day, Plaintiff filed this action in state court.

## GROUNDS FOR REMOVAL

## I.     SLUSA JURISDICTION

11.     This action is removable under the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA").

12.     Congress enacted SLUSA to curb attempts by the plaintiffs' bar to circumvent the stringent requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") by filing in state court what are, in essence, federal securities fraud class actions in the guise of state law claims.  *See Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010).  SLUSA provides that such actions are subject to removal to federal court and preemption by federal law.  *See* 15 U.S.C. § 78bb(f)(1)-(2).[3]

13.     This action is precisely the type of litigation that Congress intended to fall within the scope of SLUSA.  Indeed, Plaintiff brought a substantively identical class action in federal court before voluntarily dismissing it and re-filing it, this time solely as a purported derivative action, in state court.  *See supra* ¶¶ 8-10.  As set forth below,

---

[3] The Securities Litigation Uniform Standards Act of 1998 amended the Securities Act of 1933 and the Securities and Exchange Act of 1934 in substantially identical ways.  For convenience, this removal petition cites to the amendment of the 1934 Act, 15 U.S.C. § 78bb(f).

Plaintiff's substitution of derivative allegations for class allegations is no more than an "artful" – but ineffectual – attempt to avoid removal and preemption under SLUSA.

14.     SLUSA provides for the removal of (1) any "covered class action" (2) brought under state law (3) alleging a misrepresentation or omission of a material fact (4) in connection with the purchase or sale of (5) a "covered security." 15 U.S.C. § 78bb(f)(1)-(2).

15.     In determining whether an action satisfies these requirements, this Court "must look beyond the face of the complaint to analyze the substance of the allegations made" because plaintiffs may – as Plaintiff here does – seek to avoid SLUSA through "artful" pleading. *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 34 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006); *accord Romano*, 609 F.3d at 519-20. As set forth below, this action satisfies each of the requirements for removal under SLUSA.

**A.     This Action Is a "Covered Class Action" Brought Under State Law**

16.     Under SLUSA, a "covered class action" is an action in which common questions of law or fact predominate over questions affecting individuals and either "damages are sought on behalf of more than 50 persons" or "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. § 78bb(f)(5)(B)(i).

17.     Plaintiff purports to bring this action derivatively on behalf of the Plans, but the derivative allegations are nothing more than an ineffectual attempt to avoid SLUSA removal and preemption. Indeed, the notion that claims could properly be brought on behalf of the Plans is entirely fanciful, because neither Plan is a separate legal

6

entity, neither Plan has or had assets or liabilities of its own, and the Plans lack the capacity to sue.  The Plans on whose behalf Plaintiff purports to sue are the Employee Stock Purchase Plan ("ESPP"), including a sub-plan for British employees ("Sub-Plan"), and the Long Term Incentive Plan ("LTIP").  *See* Exhibit 8 (ESPP); Exhibit 9 (Sub-Plan); Exhibit 10 (LTIP).

18.     The ESPP was simply a program through which employees could purchase MF Global "[s]hares *from the Company* on favorable terms and . . . pay for such purchases through payroll deductions."  Exhibit 8 (ESPP) § 1 (emphasis added); *accord* Exhibit 1 (Compl.) ¶ 46.  The ESPP did not itself have any assets or liabilities.  Instead, under the ESPP, the Company maintained on its own books a Plan Account in the name of each Participant.  *See* Exhibit 8 (ESPP) § 8(a).  The ESPP expressly provided that "[a]mounts credited to Plan Accounts *shall not be trust funds and may be commingled with the Company's general assets and applied to general corporate purposes*."  *Id.* (emphasis added).  Accordingly, ESPP Participants are, at most, general creditors of MF Global.  *See*, *e.g.*, *McKee v. Paradise*, 299 U.S. 119, 122-23 (1936).  At the end of each annual Offering Period, the amount in each Plan Account was used to purchase MF Global stock *from the Company*.  Exhibit 8 (ESPP) § 8(c).  Although the ESPP established a maximum number of shares "available for purchase under the Plan," *id.* § 14(a), Participants purchased shares from the Company, *id.* §§ 1, 8(c), and, therefore, the ESPP never held them.

19.     The LTIP was a program under which MF Global granted to employees awards whose value was tied to the performance of MF Global's stock, in order to attract and retain highly qualified employees and provide them with incentives better aligned

7

with the interests of MF Global's stockholders.  *See* Exhibit 10 (LTIP) § 1; *accord*
Exhibit 1 (Compl.) ¶ 53.  Like the ESPP, the LTIP did not have assets or liabilities of its
own.  Under the LTIP, Award Agreements – which "se[t] forth the terms and provisions
applicable to Awards granted under the Plan to . . . Grantee[s]" – were between the
Grantee and the Company.  *See* Exhibit 10 (LTIP) §§ 2(a), 7, 8, 9, 10, 11.  Accordingly, it
was *the Company* that delivered shares or paid cash directly *to Grantees*.  *See*, *e.g.*, *id.*
§§ 7(f), 10(b).  Until shares or cash were delivered to Grantees by the Company,
Grantees' rights under the LTIP were those of general creditors "of the Company."  *Id.*
§§ 10(b), 15.  The LTIP was an "'unfunded' plan" with no assets.  *See id.* § 15.

20.    Unlike an ERISA plan,[4] neither Plan has or had the capacity to sue.  *See E.
States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 404 (S.D.N.Y.
1998) (Sotomayor, J.) (articulating the "uncontroversial proposition" that, "without
ERISA, benefit plans would have no capacity to sue").

21.    Under these circumstances, Plaintiff's attempt to bring claims
"derivatively on behalf of the Plans," Exhibit 1 (Compl.) ¶ 1, is nonsensical – akin to
suing derivatively on behalf of, for example, a company's maternity leave policy.  It is no
more than an improper attempt to evade preemption and removal under SLUSA.

---

[4] Employee stock purchase plans and long-term investment plans of the kinds that MF Global
adopted are not ERISA plans.  *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1009 (9th Cir. 1997)
(*en banc*) (employee stock purchase plan "is not governed by ERISA"); *Norton v. Caremark, Inc.*, No. 3-
90-227, 1991 WL 350754, at *3 (D. Minn. July 15, 1991) (long-term investment plan is not governed by
ERISA).  If, however, this Court were to conclude that either Plan is governed by ERISA, then removal
would be proper under ERISA.  *See* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws
insofar as they may now or hereafter relate to any employee benefit plan described in [29 U.S.C.
§ 1003(a)] . . . ."); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987); *Smith v. Dunham-Bush, Inc.*,
959 F.2d 6, 10-11 (2d Cir. 1992); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 409 (S.D.N.Y.
2009).

22.     In substance, this action is brought on behalf of "the Participants" in MF Global's stock-based benefit plans.  The Complaint alleges that Defendants "fail[ed] to provide complete and accurate information to *Participants* regarding the Company's financial condition and the prudence of investing in the Company Stock."  *Id.* ¶ 3 (emphasis added); *accord id.* ¶¶ 105, 107-108.[5]  Similarly, the Complaint alleges that Defendants had a duty to "safely and prudently manage the assets [sic] of the Plans for the benefit of the Plans and *the Plans' Participants*."  *Id.* ¶ 112 (emphasis added).  As shown above, the Plans have no assets; instead the Participants may have claims against MF Global as general creditors, and MF Global stock previously delivered to them by the Company pursuant to the Plans.

23.     Under the Plans, Participants acquired shares of MF Global common stock, and therefore, Participants in the Plans are the only ones who suffered losses and who can bring any potential claim.

24.     There are more than 50 participants in the Plans, each of whom Plaintiff has alleged to be "similarly situated" to himself.  *See*, *e.g.*, Exhibit 5 (Arvelo Federal Compl.) ¶¶ 103-04.  Therefore, this action is a "covered class action" under SLUSA.

25.     This action does not fall within SLUSA's exception for an "exclusively derivative action brought by one or more shareholders on behalf of a corporation."  15 U.S.C. § 78bb(f)(5)(C).  Even if the Court did not disregard Plaintiff's derivative

---

[5] Plaintiff also alleges that Defendants failed to disclose information that they possessed to the Plans, *see e.g.*, Exhibit 1 (Compl.) ¶ 11, but that allegation makes no sense in light of Plaintiff's allegation that Defendants administered the Plans.  Plaintiff does not – and cannot – identify persons to whom Defendants should have provided information that they allegedly possessed in order to disclose it to "the Plans."

allegations as an ineffectual attempt to evade federal jurisdiction, SLUSA's derivative action exception applies, by its express terms, only to a derivative action "on behalf of a corporation." As explained above, Plaintiff does not – and cannot – allege that either of the Plans is a corporation. Further, the exception applies only to a derivative action "brought by one or more shareholders" on behalf of a corporation, and Plaintiff does not – and cannot – allege that he is a shareholder of the Plans.

26.     This action is brought under state law. *See* Exhibit 1 (Compl.) ¶¶ 100-122.

**B.     The Complaint Alleges Misrepresentations and Omissions of Material Fact**

27.     The Complaint is replete with allegations that Defendants made misrepresentations and omissions material to the value of MF Global stock. For example, the Complaint alleges that "Defendants made inaccurate and/or misleading statements, as well as failed to disclose material adverse facts about MF Global's business, operations, and prospects" and "as a result . . . , MF Global's statements were inaccurate and misleading during the Relevant Period." Exhibit 1 (Compl.) ¶ 11. The Complaint devotes seventeen paragraphs to allegedly "INACCURATE STATEMENTS" in MF Global's filings with the Securities and Exchange Commission ("SEC"), *see id.* ¶¶ 69-85, characterizing those disclosures to investors as "materially" misleading, inaccurate or deceptive. *Id.* ¶¶ 72, 77, 79, 80, 82, 83, 85. Under the heading "THE TRUTH EMERGES," the Complaint then alleges declines in the market price of MF Global stock following alleged corrective disclosures. *See id.* ¶¶ 86-99.

28.     In addition, the Complaint asserts a claim of "MISREPRESENTATION AND NONDISCLOSURE," based on allegations that by making "material

10

misrepresentations and misleading omissions," Defendants breached an asserted fiduciary duty to disclose "accurate and truthful information about the financial affairs of the Company and about the accurate valuation of the Company stock." *Id.* ¶¶ 105, 109 (Count Two); *see also id.* ¶ 101 (Count One) ("[T]he Company's true adverse financial and operating condition was being concealed . . . ."); *id.* ¶ 115 (Count Three) ("[T]he price of MF Global Stock was artificially inflated . . . ."): *id.* ¶ 120 (Count Four) ("[T]he market price of MF Global Stock was artificially inflated.").

### C. The Alleged Misrepresentations and Omissions Were in Connection with the Purchase or Sale of MF Global Stock

29.     Under the Plans, the Company allegedly "offered" MF Global stock "to its employees."  Exhibit 1 (Compl.) ¶ 2; *see also id.* ¶ 46 (under ESPP, employees "purchas[ed] shares from the Company"); *id.* ¶ 54 (under LTIP, the Company granted awards of, *inter alia*, options and listed shares to employees).  Transactions pursuant to the Plans constituted purchases and sales of MF Global stock.[6]

30.     Plaintiff's claims make it clear that the alleged misrepresentations and omissions were "in connection with" purchases and sales of MF Global stock.  Count One asserts that Defendants are liable for "continuing to offer MF Global Stock under the Plans, when the Company's true adverse financial and operating condition was being

---

[6] *See, e.g., Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002) ("The grant of an employee stock option on a covered security is . . . a 'sale' of that covered security" because "[t]he option is a contractual duty to sell a security at a later date"), *amended by*, 320 F.2d 905 (9th Cir. 2003); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 443 (S.D.N.Y. 2001) (Marrero, J.) (holding that the purchase or sale requirement includes transactions "in connection with a contract to purchase" securities and finding claims precluded under SLUSA); *Brecher v. Citigroup Inc.*, 797 F. Supp. 2d 354, 359-60, 372 (S.D.N.Y. 2011) (holding state law claims brought by employees who acquired stock and stock options through company plan precluded by SLUSA), *vacated on other grounds*, No. 09 Civ. 7359 (SHS), 2011 WL 5525353 (S.D.N.Y. Nov. 14, 2011).

concealed." *Id.* ¶ 101. Count Two asserts a claim of "MISREPRESENTATION AND

NONDISCLOSURE," based on allegations that by making "material misrepresentations

and nondisclosures to the Plans' [sic] and the Plans' Participants," Defendants breached

an asserted fiduciary duty to disclose "accurate and truthful information about the

financial affairs of the Company and about the accurate valuation of the Company stock

in the Plans." *Id.* ¶¶ 105, 108. As set forth above, the MF Global stock made available

under the Plans was purchased by Plan Participants. Count Three asserts that Defendants

are liable because "the Plans invested in MF Global Stock when the price of MF Global

Stock was artificially inflated," and expressly incorporates the prior allegations that the

market price of MF Global stock declined after alleged corrective disclosures of

misrepresentations. *Id.* ¶¶ 111, 115. Count Four asserts that Defendants are liable

because they continued to allow MF Global stock to be "offer[ed] . . . under the Plans

even though the market price . . . was artificially inflated," again expressly incorporating

prior allegations that the market price of MF Global stock declined after alleged

corrective disclosures of misrepresentations. *Id.* ¶¶ 118, 120.

> **D.    MF Global Stock Is a "Covered Security" Under SLUSA**

31.    Under SLUSA, a "covered security" is a nationally traded security listed

on a regulated national securities exchange, such as the New York Stock Exchange, at the

time during which it is alleged that the misrepresentation, omission, or manipulative or

deceptive conduct occurred. *See* 15 U.S.C. § 78bb(f)(5)(E). From the beginning of the

alleged "Relevant Period" until the Company filed for bankruptcy on October 31, 2011,

MF Global stock traded on the New York Stock Exchange.

## II.    "RELATED TO" BANKRUPTCY JURISDICTION

32.    In the alternative, this action is also removable under 28 U.S.C. § 1452(a) because this action is a state court civil proceeding "related to" MF Global's bankruptcy proceedings.

33.    The MF Global bankruptcy proceedings commenced on October 31, 2011 and remain pending today.

34.    A civil proceeding is "related to" a bankruptcy if its "outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotations omitted). The "proceeding need not necessarily be against the debtor or against the debtor's property," but is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) . . . which in any way impacts upon the handling and administration of the bankrupt estate." *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 438 (S.D.N.Y. 2008) (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984)).

35.    The outcome in this action could alter the rights of the debtor because MF Global's By-Laws clearly state that Defendants – the current and former officers and the former independent directors of MF Global – are entitled to indemnification from the bankrupt estate for the costs of defending this action. *See* Exhibit 11 (MF Global's By-Laws) § 6.5; *see also Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, No. 11 Civ. 4141 (BSJ), 2012 U.S. Dist LEXIS 10340, at *11-12 (S.D.N.Y. Jan. 25, 2012) (holding that state law actions filed against former officers and directors of bankrupt entities are "related to" the bankruptcy proceeding where the defendants "may be able to seek

indemnification from the bankrupt estate for the costs of defending themselves in [the] lawsuit").

36.    Therefore, this action is related to MF Global's bankruptcy proceedings.

## OTHER PROCEDURAL REQUIREMENTS

37.    Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d). Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, Defendants will file with this Court a Certificate of Service of Notice to Adverse Parties of Removal to Federal Court.

38.    Concurrently with the filing of this Notice of Removal, Defendants are filing a Notice of Filing of Notice of Removal with the clerk of the Supreme Court of New York, County of Queens in accordance with 28 U.S.C. § 1446(d).

## CONCLUSION

WHEREFORE, Defendants remove this action from the Supreme Court of New

York, County of Queens.

Dated:   New York, New York        Respectfully submitted,
         March 28, 2012

_____

Edmund Polubinski III
David B. Toscano
Julia Nestor
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 450-3695
edmund.polubinski@davispolk.com

*Attorneys for David P. Bolger, Eileen S. Fusco,*
*David Gelber, Martin J.G. Glynn, Edward L.*
*Goldberg, David I. Schamis, and Robert S. Sloan*

Benjamin E. Rosenberg
Andrew J. Levander
Rebecca S. Kahan
Matthew L. Mazur
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Tel.: (212) 698-3500
Fax: (212) 698-3599
benjamin.rosenberg@dechert.com

*Attorneys for Jon S. Corzine*

Neil S. Binder
Lee S. Richards III
RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY 10281-1003
Tel.: (212) 530-1809
Fax: (917) 344-8809
nbinder@rkollp.com

*Attorneys for Henri J. Steenkamp*

Arthur H. Aufses III
Paul Schoeman
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Tel.: (212) 715-9234
Fax: (212) 715-8000
aaufses@kramerlevin.com

*Attorneys for Bradley I. Abelow*

Robert H. Hotz, Jr.
Joseph L. Sorkin
Estela Diaz
Dean L. Chapman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1028
Fax: (212) 872-1002
rhotz@akingump.com

*Attorneys for John R. MacDonald*

James N. Benedict
Sean M. Murphy
Justin A. Alfano
MILBANK TWEED HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Tel.: (212) 530-5688
Fax: (212) 822-5688
smurphy@milbank.com

*Attorneys for Michael G. Stockman*